UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTY, ET AL.,

    Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC,

    Defendant.

_____/

Case No. 18-cv-13415

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE THEIR SECOND AMENDED COMPLAINT [#59] AND GRANTING DEFENDANT'S MOTION FOR SANCTIONS [#58]

### I. INTRODUCTION

Before the Court is Plaintiffs' Motion for Leave to File Their Second Amended Complaint. Dkt. No. 59. Plaintiffs request this Court grant them leave to add two new claims to their complaint. The first proposed claim alleges negligence against Defendant Nationstar Mortgage LLC ("Nationstar") in regard to its investigation into the complaint that Mr. Christy submitted against it. The second proposed claim alleges that Defendant breached its contract with Freddie Mac, causing Plaintiffs to suffer damages. Also before the Court is Defendant's Motion for Sanctions. Defendant requests that this Court impose Rule 11 sanctions and sanctions under 28 U.S.C. §1927 against Plaintiffs for allegedly fraudulently

-1-

submitting two documents that they attached as exhibits to their First Amended Complaint. Dkt. No. 58.

Pursuant to E.D. Mich. LR 7.1(f)(2), this Court has determined that oral argument is not necessary and will cancel the hearing scheduled for these Motions. For the reasons discussed below, the Court will deny Plaintiffs' Motion for Leave to File Their Second Amended Complaint. The Court will grant Defendant's Motion for Sanctions.

## II. FACTUAL BACKGROUND

On May 12, 2015, Plaintiffs Cynthia and Nicholas Christy obtained a $136,000.00 loan to purchase vacation property located in Au Gres, Michigan. Dkt. No. 64, pg. 8 (Pg. ID 2493). Plaintiffs signed a mortgage as security for the loan. *Id.* Freddie Mac owned the mortgage and Defendant Nationstar serviced the mortgage until December 16, 2017 when Wells Fargo began service of the mortgage. *Id.* at pg. 9 (Pg. ID 2494).

In October of 2017, Mr. Christy informed Defendant that his primary residence in Florida had been damaged by a hurricane and asked for assistance in making payments on his vacation property. *Id.* Defendant offered Plaintiffs a forbearance plan, where Plaintiffs could forego their mortgage payments for October and November 2017 if they made both payments, and their December

payment, on December 1, 2017. Dkt. No. 20-3, pg. 2 (Pg. ID 460). Plaintiffs assert that under this forbearance plan, Defendant promised that it would not report adverse credit information to credit reporting agencies as long as Plaintiffs made their required payments in a timely manner. Dkt. No. 59, pg. 11 (Pg. ID 1806). The letter describing the forbearance plan states:

> **Credit Reporting**: As a result of this reduction of payments, you will become delinquent on your mortgage. We will not report your entry into a Forbearance Plan or the delinquency status of your loan to credit reporting agencies for the duration of the Forbearance Period. Credit scoring may consider whether there is an increased credit risk due to the lack of reporting. We are uncertain as to the impact on your credit score, particularly if you are current on your mortgage or otherwise have a good credit score.

Dkt. No. 20-3, pg. 5 (Pg. ID 463).

On December 1, 2017, Defendant informed Plaintiffs in a letter that they were delinquent on their forbearance plan payments. Dkt. No. 20-5. Defendant offered Plaintiffs a payment plan that would allow them to cure their delinquency by paying increased monthly payments for six months, from December 2017 until May 1, 2018. *Id.* at pg. 3 (Pg. ID 471). The last page of Defendant's letter stated that:

> The status of your Loan will be reported monthly to all respective credit reporting agencies for the duration of this Agreement and thereafter. Accordingly, for the duration of this Agreement and thereafter, we will report your loan as delinquent if your Loan is not completely current under your Loan Documents, even if you make timely payments to Lender in accordance with this Agreement, if any. This Agreement does not constitute

> an agreement by Lender to waive any reporting of the delinquency status of your Loan payments.

*Id.* at pg. 5 (Pg. ID 473).

Plaintiffs state that they have complied with the increased payment plan, but that Defendant reported to Equifax and TransUnion that Plaintiffs had been delinquent in making their mortgage payments. Dkt. No. 20, pg. 6 (Pg. ID 438); *see also* Dkt. No. 20-8 (Nationstar reporting that Plaintiffs were "60 days late" on their mortgage payments). Plaintiffs also contend that Defendant violated the mandate issued by Freddie Mac when it reported adverse credit information to the agencies. Dkt. No. 59, pg. 12 (Pg. ID 1807). Plaintiffs state that they were unable to obtain a mortgage from Goldwater Bank ("Goldwater") to purchase a house in Grand Blanc, Michigan as a result of Defendant's adverse reporting to credit agencies. *Id.* Plaintiffs therefore withdrew approximately $215,000.00 from Mrs. Christy's Individual Retirement Account in order to purchase the residence. *Id.* This resulted in additional tax liabilities for Plaintiffs in the approximate amount of $48,930.00. *Id.*

On April 25, 2018, Mr. Christy complained to Defendant about its reporting of adverse credit information to credit reporting agencies. Dkt. No. 66-2, pg. 15 (Pg. ID 2895). Defendant advised that it would conduct an investigation. *Id.* On May 21, 2018, Mr. Christy called Defendant and requested that it correct the adverse credit information because he was applying for a new mortgage and the

adverse information was affecting his interest rate. *Id.* at pg. 18 (Pg. ID 2898). On June 12, 2018, Mr. Christy called Defendant to check the status of the investigation. *Id.* at pg. 29 (Pg. ID 2900). Defendant advised Mr. Christy that it had suppressed adverse credit reporting during the plan, but it was still required to report a final payment rating to credit bureaus after it transferred the loan to Wells Fargo. *Id.* at pg. 21 (Pg. ID 2901). Defendant informed Mr. Christy that it could not adjust the adverse report because the loan account was inactive after its transfer to Wells Fargo. *Id.*

Plaintiffs filed their initial complaint against Defendant on November 1, 2018. Plaintiffs filed their First Amended Complaint ("FAC") on February 25, 2019. Dkt. No. 20. The FAC alleges: 1) negligent violation of the Fair Credit Reporting Act ("FCRA"); 2) willful violation of the FCRA; 3) breach of contract for Defendant's alleged violation of the forbearance plan it had with Plaintiffs; and 4) promissory estoppel. Dkt. No. 20.

Plaintiffs state that on June 6 and 7, 2019, their counsel traveled to Texas to take depositions of five Nationstar employees. Dkt. No. 59, pg. 3 (Pg. ID 1798). Plaintiffs' counsel also took the deposition of a Nationstar employee on June 13, 2019. *Id.* Plaintiffs learned from these depositions that their forbearance plan was a disaster relief forbearance plan and that Defendant Nationstar was therefore required to follow the mandates of Freddie Mac. *Id.* The Freddie Mac Seller/

Servicer Guide ("Guide") disaster reporting requirements state that "[t]he Servicer must not report a Borrower who is on a disaster-related forbearance plan, repayment plan[,] or Trial Period Plan to the credit repositories." Dkt. No. 66-3, pg. 10 (Pg. ID 2920). This provision took effect on March 2, 2016. *Id.*

Based on this alleged newly-discovered information, Plaintiffs filed the present Motion for Leave to File Their Second Amended Complaint on June 17, 2019, along with a proposed Second Amended Complaint. Dkt. Nos. 59, 59-1. Plaintiffs request leave to add two claims to their complaint. Proposed Count V alleges breach of contract for Defendant's alleged failure to abide by Freddie Mac's mandate. Dkt. No. 59-1, pg. 25 (Pg. ID 1840). Proposed Count VI alleges negligence for Defendant's alleged failure to properly investigate and respond to Plaintiffs' complaints that Nationstar wrongfully reported adverse credit information to credit reporting agencies. *Id.* at pg. 28 (Dkt. No. 1843). Defendant opposed Plaintiffs' Motion on July 1, 2019. Dkt. No. 64, arguing that any amendment would be futile, done in bad faith, dilatory, and would result in undue delay and prejudice to Defendant. Dkt. No. 64. Plaintiffs filed their reply to Defendant's opposition on July 17, 2019. Dkt. No. 66.

On June 13, 2019, Defendant filed its Motion for Sanctions. Dkt. No. 58. Plaintiffs responded in opposition on June 21, 2019. Dkt. No. 60. Defendant replied on June 28, 2019. Dkt. No. 62.

## III. LEGAL STANDARD

Amendments to pleadings are governed by Federal Rule of Civil Procedure 15(a). Under this rule, leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "[D]istrict courts have discretion to permit or deny an amendment after a defendant files an answer to a plaintiff's complaint . . . ." *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, No. 15-4406, 2016 WL 6832974, at *7 (6th Cir. Nov. 21, 2016) (citing *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990)). Despite the trial court's discretion, "[t]he thrust of Rule 15 is . . . that cases should be tried on their merits rather than the technicalities of pleadings." *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)).

The Sixth Circuit has identified factors that this Court must consider in determining whether to allow an amendment. These factors are: undue delay in filing, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the proposed amendment. *Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

A proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss. *U.S. ex rel Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 440 (6th Cir. 2016). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "allege enough facts to make it plausible that the defendant bears legal liability." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016). The facts need to make it more than "merely possible that the defendant is liable; they must make it plausible." *Id.* "Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Id.*

### IV. Discussion

1. Futility
   a. Freddie Mac Internal Policies

Defendant contends that Plaintiffs' breach of contract claim with Freddie Mac is futile because Plaintiffs cannot enforce the terms of the servicer guidelines agreement between Freddie Mac and Nationstar. Dkt. No. 64, pg. 13 (Pg. ID 2498). Defendant states that Plaintiffs' Motion does not argue that they are third party beneficiaries to the contract between Nationstar and Freddie Mac. *Id.* at pg. 14 (Pg. ID 2499). However, Defendant asserts that Plaintiffs' claim would still be futile even if they did allege that they are third party beneficiaries. *Id.* Plaintiffs argue in their reply that they are third party beneficiaries of the Freddie Mac Seller/Servicer Guide. Dkt. No. 66, pg. 11 (Pg. ID 2871).

Michigan law states that:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee. (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

Mich. Comp. Laws Ann. § 600.1405. The Sixth Circuit has noted that an objective test that focuses on the language of the contract is used to determine if a claiming party is a third party beneficiary. *Ridgway v. Ford Dealer Comput. Servs., Inc.*, 114 F.3d 94, 96 (6th Cir. 1997). Further, "[t]hird-party beneficiary status requires an express promise to act to the benefit of the third party; where no such promise exists, that third party cannot maintain an action for breach of the contract." *Kisiel v. Holz*, 725 N.W.2d 67, 69–70 (Mich. Ct. App. 2006). Only intended beneficiaries may sue when a contractual promise has been breached. *Id.* The Restatement of Contracts states:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302 (1981).

Defendant cites *Dollens v. Wells Fargo Bank, N.A.* for the proposition that Plaintiffs cannot be third party beneficiaries of Freddie Mac's servicing guidelines. 356 P.3d 531, 542 (N.M. Ct. App. 2015). *Dollens* concluded that borrowers could derive benefits from some of the provisions of Freddie Mac's Sellers' and Servicers' Guide, but nothing in that document indicated that borrowers are intended beneficiaries entitled to enforce the provisions of the Guide. *Id.* To reach this conclusion, the *Dollens* court read the terms of the Guide and found that the "plain terms . . . demonstrate that it exists to protect Freddie Mac's interest, incidentally benefitting borrowers when their interests align with Freddie Mac's." *Id.*

Defendant cites several other cases that have reached the same conclusion. *See, e.g.*, *Pennell v. Wells Fargo Bank, N.A.*, No. 1:10-cv-00582, 2012 WL 2873882, at * 8 (S.D. Miss. July 12, 2012) (stating that "[f]ederal courts have uniformly held that borrowers are not third-party beneficiaries of mortgage servicing guidelines); *Wells Fargo Bank, N.A. v. Sinnott*, No. 2:07 CV 169, 2009 WL 3157380, at *11 (D. Vt. Sept. 25, 2009) (noting that "[t]he argument that a mortgagor has third-party beneficiary status under the Servicer Guide has been uniformly rejected by the federal courts."); *Hinton v. Federal Nat'l Mortg. Ass'n*, 945 F. Supp. 1052, 1057 (S.D. Tex. 1996) (stating that "[t]he [servicer] guide is a

set of instructions from a lender-principal to a servicer-agent; it is not a contract between borrower and lender.").

Plaintiffs argue that this case is distinct from the numerous cases cited by Defendant because none of those cases address section 8404.5(a) of the Guide. Section 8404.5(a) of the Guide states that "[t]he Servicer must not report a Borrower who is on a disaster-related forbearance plan, repayment plan[,] or Trial Period Plan to the credit repositories." Dkt. No. 66-3, pg. 10 (Pg. ID 2920). This language of the Guide indicates that Freddie Mac intended to give borrowers the benefit of the requirement that loan servicers are prohibited from reporting borrowers to credit repositories. Therefore, a question of fact exists about whether Plaintiffs are third party beneficiaries to this contract provision and this claim could survive a motion to dismiss. For these reasons, the Court concludes that Plaintiffs' proposed Count V alleging breach of contract for Defendant's failure to abide by the Freddie Mac mandate is not futile.

b. Preemption by the FCRA

Next, Defendant argues that Plaintiffs' proposed negligence claim, Count VI of their proposed Second Amended Complaint, is preempted by the Fair Credit Reporting Act. Dkt. No. 64, pg. 16 (Pg. ID 2501). Plaintiffs did not reply to Defendant's preemption argument. *See* Dkt. No. 66.

The FCRA, 15 U.S.C. § 1681t, outlines the interaction of state law with the FCRA. The statute states that the FCRA does not affect or exempt any individual from complying with state law with respect to the collection, distribution, or use of any information on consumers. 15 U.S.C. § 1681t(a). However, the statute states several exceptions to this rule. State law may not interfere with the FCRA "with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]"

"To determine whether a state law cause of action is preempted under [15 U.S.C. § 1681t(b)(1)(F)], courts must first consider whether the action is based on allegations that a furnisher provided inaccurate or incomplete information to a credit reporting agency or that a furnisher failed to correct inaccurate information. If so, the action is barred." *In re Tomlin*, No. 15-20852, 2016 WL 1317412, at *12 (Bankr. E.D. Ky. Mar. 31, 2016).

Here, Plaintiffs' proposed negligence claim alleges that Defendant failed to properly investigate and respond to Mr. Christy's complaints about Defendant furnishing adverse credit information to credit reporting agencies. This claim therefore is based on allegations that Nationstar failed to correct inaccurate information in its credit report to credit reporting agencies. For this reason,

pursuant to 15 U.S.C. § 1681t(b)(1)(F), the FCRA preempts Plaintiffs' proposed Count VI.

2. Bad Faith, Dilatory Motive, Undue Delay, and Prejudice

Defendant lastly asserts that Plaintiffs' proposed amendment is a bad faith, dilatory action that will result in undue delay and prejudice to Defendant. Dkt. No. 64, pg. 19 (Pg. ID 2504). Plaintiffs argue that they filed their Motion for Leave shortly after they discovered that they had a disaster forbearance plan and that Defendant was required to follow the policies of Freddie Mac. Dkt. No. 59, pg. 3 (Pg. ID 1798). Defendant responds that the fact that Plaintiffs had a disaster relief forbearance plan was information that was readily available to Plaintiffs before they filed their initial complaint. Dkt. No. 64, pg. 21–22 (Pg. ID 2506–07). Defendant references the correspondence that it sent to Plaintiffs on October 23, 2017 to support its proposition. Dkt. No. 20-3. Plaintiffs attached this correspondence to its First Amended Complaint. The letter states that Plaintiffs' property is located in a "major disaster area" and informs Plaintiffs that they may contact FEMA and Red Cross for additional assistance. *Id.* at pg. 5 (Pg. ID 463). Based on the language included in the October 23, 2017 letter, Defendant argues that Plaintiff should have known that it had a disaster relief forbearance plan.

Delay alone is not a sufficient reason to deny leave to amend; the opposing party to the motion must make a "significant showing of prejudice to prevail." *Prater*

*v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2007) (internal citations omitted). To determine what constitutes prejudice, the Sixth Circuit considers, among other things, if the amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial, and if it would significantly delay the resolution of the dispute. *Rogers v. I.R.S.*, 822 F.3d 854, 857 (6th Cir. 2016).

A plaintiff is generally not dilatory in seeking to amend a complaint "when no trial or pretrial dates have been scheduled and no significant activity beyond the pleading stage has occurred." *Boyce v. CitiMortgage, Inc.*, 992 F. Supp. 2d 709, 720 (W.D. Tex. 2014). However, once the scheduling order deadline has passed, a plaintiff must show good cause for failure to seek leave to amend earlier. *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). District courts should also evaluate prejudice to the opposing party before modifying the scheduling order. *Id.*

Discovery in this case ended on May 31, 2019. Dkt. No. 16. The dispositive motion cutoff in this case occurred on July 1, 2019. *Id.* Trial in this matter is set for December 10, 2019. *Id.* Defendant filed a motion for summary judgment that is set for hearing before this Court in September 2019. Dkt. No. 69. Plaintiffs filed their Motion for Leave on June 17, 2019. Dkt. No. 59. Plaintiffs' Motion is dilatory because they did not file it until after the close of discovery and less than two weeks before the dispositive motion cutoff date.

Further, allowing Plaintiffs to add two counts to their complaint at this late stage would require this Court to reopen discovery and allow the parties additional time to file new dispositive motions. This Court would also have to adjourn trial. These adjournments would prejudice Defendant significantly because it has already expended time and resources filing its present motion for summary judgment. Defendant would need to expend more resources to conduct additional discovery and file more dispositive motions if this Court granted leave.

To summarize, granting Plaintiffs leave to amend at this late stage would require a significant adjournment of the current scheduling order and cause prejudice to Defendant. Further, there is evidence to suggest that Plaintiffs should have been aware that they had a disaster relief forbearance plan before they filed their initial complaint and their Motion is therefore dilatory. Lastly, this Court held above that Plaintiffs' proposed Count VI alleging negligence is futile because it is preempted by the FCRA. For these reasons, the Court will deny Plaintiffs' Motion for Leave to File Their Second Amended Complaint.

3. Motion for Sanctions

Defendant's Motion for Sanctions states that on February 8, 2019, it issued Interrogatories, Requests for Production of Documents, and Requests for Admissions to Plaintiff. Dkt. No. 58, pg. 12 (Pg. ID 1658). Defendants assert that

Plaintiffs did not produce any loan applications in response to its discovery requests. *Id.* However, Plaintiffs submitted a purchase pre-approval letter and a letter denying Plaintiffs' loan that it attached as Exhibit G to its First Amended Complaint. *Id.* The denial letter denies Plaintiffs' loan application because of their negative credit report. Dkt. No. 20-9. David Carr, a former mortgage loan officer for Goldwater, signed both the purchase pre-approval and denial letter. Dkt. No. 20-9.

On March 12, 2019, Defendant issued a subpoena for the production of documents to Goldwater Bank. Dkt. No. 58, pg. 13 (Pg. ID 1659). On April 26, 2019, Goldwater Bank executed a Declaration, which stated that it did not authorize the purchase pre-approval and the denial letter that Plaintiffs submitted as exhibits. Dkt. No. 58-6, pg. 3 (Pg. ID 1741). The declaration further states that the purchase pre-approval letter is not on approved Goldwater Bank letterhead and that Goldwater Bank does not send purchase pre-approval letters in the form that Plaintiffs submitted to Defendant. *Id.* Goldwater also stated that the denial letter is not on approved Goldwater letterhead and the language and form of the document is not consistent with the forms that Goldwater uses. *Id.* at pg. 3 (Pg. ID 1741). Goldwater Bank declared that it has no record of a loan application for Plaintiffs and that, based on Goldwater's records, Goldwater never denied Plaintiffs a loan. *Id.*

On May 17, 2019, Defendant deposed David Carr. Dkt. No. 58, pg. 14 (Pg. ID 1660). Mr. Carr testified that he is friends with Mr. Christy and that he wrote the denial letter at Mr. Christy's request. Dkt. No. 58-7, pg. 12–13 (Pg. ID 1758–59).

Plaintiffs respond to Defendant's Motion for Sanctions by stating that Mr. Christy realized it was beneficial to have a pre-approval letter when looking for a house. Dkt. No. 60 , pg. 15 (Pg. ID 1908). Plaintiffs therefore concede that Mr. Christy did request a pre-approval letter from Mr. Carr. *Id.* at pg. 16 (Pg. ID 1909). Plaintiffs assert that Mr. Carr provided Plaintiffs with a pre-approval letter based on the promise that Plaintiffs' credit report would be corrected. *Id.* Mr. Christy was not aware of whether Mr. Carr obtained his credit information before providing him with the pre-approval letter, or if obtaining his credit information was necessary. *Id.* at pg. 17 (Pg. ID 1910). Mr. Christy was unable to have his credit restored. *Id.* Therefore, Plaintiffs could not obtain a reasonable mortgage and decided to purchase the Grand Blanc home with money from Mrs. Christy's IRA. *Id.* Plaintiffs concede that Mr. Christy then asked Mr. Carr to draft them a denial letter confirming that Goldwater would not approve the mortgage. *Id.* Plaintiffs state that they still would not have been able to obtain a mortgage because of Defendant's wrongful reporting of their adverse credit information.

Fed. R. Civ. P. 11 governs representations to the court and sanctions for violating the Rule. Fed. R. Civ. P. 11(b) states that presenting paper to the court is

a certification from the attorney that the document is not being presented for an improper purpose, that the legal contentions are warranted, and that the factual contentions have evidentiary support. If a court determines that Rule 11(b) has been violated, then it "may impose an appropriate sanction on any attorney . . . that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Sanctions imposed under Rule 11 must be limited to what deters repetition of the unfavorable conduct. Fed. R. Civ. P. 11(c)(4). The sanction may be a nonmonetary directive, an order to pay a penalty to the court, or an order to pay for the reasonable attorney's fees directly resulting from the violation. *Id.*

Pursuant to 28 U.S.C. § 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Here, Plaintiffs concede that Mr. Christy asked Mr. Carr to draft fake documents for them. Therefore, Plaintiffs submitted loan documents to this Court that were not authentic/not representative of actual events. Plaintiffs state that they still would not have been able to secure a loan. However, Plaintiffs never actually applied for a loan with Goldwater to determine if they would be rejected. Plaintiffs base their damages on their allegation that they were unable to be approved for a loan and suffered monetary damages because they had to withdraw funds from

Mrs. Christy's IRA in order to buy their home in Grand Blanc. But again, this allegation by Plaintiffs is in actuality speculative.

Defendant requests that at minimum, this Court reimburse it for its attorney fees and costs incurred as a result of Plaintiffs' allegations that they suffered damages because they were unable to obtain a loan to purchase the Grand Blanc residence. Dkt. No. 58, pg. 24 (Pg. ID 1670). Defendant also requests that any portion of Plaintiffs' pleadings that reference the fraudulent letters or damages from any alleged denial of a loan be stricken. *Id.* Accordingly, for the reasons discussed, this Court will grant Defendant the sanctions it requests. Plaintiffs are required to reimburse Defendant for the attorney fees and costs incurred from Plaintiffs' allegations of damages because they were unable to obtain a loan. This Court will also strike the pre-approval letter and denial letter and any reference to them.

## V. Conclusion

For the reasons discussed herein, the Court will deny Plaintiffs' Motion for Leave to File Their Second Amended Complaint. This Court will grant Defendant's Motion for Sanctions.

SO ORDERED.

Dated: August 8, 2019

s/Gershwin A. Drain
Hon. Gershwin A. Drain
United States District Court Judge

CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record on
August 8, 2019, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager